

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES STROUSE,

    Plaintiff,

v.                          Civil Action No.   3:13CV44

BUREAU OF PRISONS, et al.,

    Defendants.

## MEMORANDUM OPINION

James Strouse, a federal inmate formerly housed at the Federal Correctional Center in Petersburg ("FCC") filed this action under Bivens.[1]  The matter is before the Court for evaluation pursuant to Federal Rule of Civil Procedure Rule 8(a), 20(a),[2] and 28 U.S.C. §§ 1915(e)(2) and 1915A.  For the reasons set forth below, the Court will, inter alia, dismiss all parties except Defendant Blackburn as improperly joined, and

_____

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[2] That rule provides, in relevant part:

**(2) Defendants.** Persons . . . may be joined in one action as defendants if:
    **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
    **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).

dismiss the claims against Defendant Blackburn for failure to state a claim.

## I.  PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A.  The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).  The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th

Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citation omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). In order for a claim or complaint to

3

survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. JOINDER

The Federal Rules of Civil Procedure place limits on a plaintiff's ability to join multiple defendants in a single pleading. See Fed. R. Civ. P. 20(a). "The 'transaction or occurrence test' of [Rule 20] . . . 'permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'" Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)). "But, Rule 20 does not authorize a

plaintiff to add claims 'against different parties [that] present[ ] entirely different factual and legal issues.'" <u>Sykes v. Bayer Pharm. Corp.</u>, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (alterations in original) (quoting <u>Lovelace v. Lee</u>, No. 7:03cv00395, 2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007)). "And, a court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of [promoting convenience and expediting the resolution of disputes], but will result in prejudice, expense, or delay.'" <u>Id.</u> (quoting <u>Aleman v. Chugach Support Servs., Inc.</u>, 485 F.3d 206, 218 n.5 (4th Cir. 2007)).

In addressing joinder, the Court is mindful that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 724 (1966). This impulse, however, does not provide a plaintiff free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated. <u>See, e.g.</u>, <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007); <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1350 (9th Cir. 1997). Thus, "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his

5

copyright, all in different transactions—should be rejected if filed by a prisoner." George, 507 F.3d at 607.

"The Court's obligations under the [Prison Litigation Reform Act ("PLRA")] include review for compliance with Rule 20(a)." Coles v. McNeely, No. 3:11CV130, 2011 WL 3703117, at *3 (E.D. Va. Aug 23, 2011) (citing George, 507 F.3d at 607). "Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that these complaints have produced but also to ensure that prisoners pay the required filing fees." Id. (citing 28 U.S.C. § 1915(g)); Showalter v. Johnson, No. 7:08cv00276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009) ("To allow [plaintiff] to pay one filing fee yet join disparate claims against dozens of parties flies in the face off the letter and spirit of the PLRA." )

As dicussed below, Strouse fails to comply with the requirements for proper joinder in his Particularized Complaint.

## II.  IMPROPERLY JOINED CLAIMS

### A.  Procedural History

Strouse's original complaint failed to provide each defendant with fair notice of the facts and legal basis upon

which his or her liability rested.   Therefore, by Memorandum
Order entered on February 18, 2014, the Court directed Strouse
to file a particularized complaint.   (ECF No. 21.)
Subsequently, Strouse submitted a Particularized Complaint that
neither provided each defendant with fair notice of the facts
and legal basis upon which his or her liability rested, nor
comported with joinder requirements. (ECF No. 27.)   Accordingly,
by Memorandum Order entered April 18, 2014, the Court directed
Strouse to file a second particularized complaint that corrected
such deficiencies.

On June 26, 2014, Strouse filed his Particularized
Complaint.   (ECF No. 48.)   Strouse's Particularized Complaint
again fails to comply with the joinder requirements and fails to
provide each defendant with fair notice of the facts and the
legal basis upon which his or her liability rests.   Accordingly,
the Court will drop all parties from the action, except for the
first named party in the body of the Particularized Complaint,
Defendant Blackburn.   (Part. Compl. 2); see Loney v. Wilder,
No. 3:08CV820, 2011 WL 1827440, at *3 (E.D. Va. May 12, 2011)
(employing a similar procedure); Jackson v. Olsen, No. 3:09cv43,
2010 WL 724023, at *3 (E.D. Va. Mar. 1, 2010) (describing
remedies available for misjoinder and failure to comply with
Fed. R. Civ. P. 8(a) and 41(b)).

### B.    Summary Of Allegations And Claims

The Particularized Complaint names seven defendants[3] and is a rambling, nearly incomprehensible list of purported misdeeds that occurred between 2012 and 2014.    (See Part. Compl. 1-11.) Strouse's Particularized Complaint consists of allegations ranging from Defendants' purported interference with his mail and email, retaliating and conspiring against against Strouse, searching his cell, filing "false" disciplinary reports, and sanctioning Strouse, in no discernable order.    Under his "Civil Rights Violated" section, Strouse then lists each constitutional amendment he believes the Defendants violated, but then provides rambling paragraphs of various disparate acts committed by each Defendant, mixed with citations to case law, memoranda, and Strouse's prior cases with this Court.    (See, e.g., id. 12-14.)[4] Strouse's claims wholly defy joinder requirements.    At most, his claims amount to a list of disparate acts committed by different Defendants on a variety of dates.    Moreover, Strouse wholly fails to concisely explain how each Defendant's conduct violated his constitutional rights.

---

[3]  Strouse names the following individuals as defendants ("Defendants"):    Warden E.D. Wilson;  Unit Manager Kevin Kiddy; Counselor Blackburn; SIA Negron; SIS Bernando; DHO Bennet; and, Trust Fund Supervisor Whitley.

[4]  The Court corrects the capitalization, punctuation, and spacing in the quotations to Strouse's submissions.

For example, Strouse begins by complaining about unnamed defendants impeding his legal and special mail and blocking emails. (Part. Compl. 1-2.) Strouse then states "retaliatory cell searches by sia, sis." (Id. at 2.) Next, Strouse argues that "prison staff member(s) conspired to commit conspiracy to cause injury to Strouse by filing frivolous incident reports," which resulted in sanctions and placement in the special housing unit. (Id.) Strouse next claims that Defendant Blackburn refused to "dismiss and expunge the code #305 incident report." (Id.) Strouse then backtracks and explains that Defendant Wilson and Defendant Trust Fund Supervisor Whitley and Defendant SIS Bernando impeded or refused to remedy Strouse's blocked email or legal mail. (Id. at 3-4.) Strouse next complains that Defendant DHO Bennet "sanction[ed] Strouse." (Id. at 4.) Later Strouse argues that SIS Bernando read Strouse's mail to his mother in which he called SIS Bernando "an asshole, bastard, and other sorts of names" and SIS Bernando wrote an incident report on Strouse. (Id. at 6.) The remainder of the Particularized Complaint cycles back through a similarly terse and disparate list of complaints stemming from Strouse's incarceration in FCI Petersburg between 2012 and 2014.

Strouse also insists that all of the Defendants were involved in a conspiracy to deprive him of his constitutional

rights and violated a variety of his constitutional rights. (<u>See,</u> <u>e.g.,</u> <u>id.</u> at 20-21, 25, 30.)

### C.   Dismissal Of Improperly Joined Claims And Parties

It is apparent that Strouse has submitted the sort "mishmash of a complaint" that the rules governing the joinder of parties aim to prevent.   <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007).

Although Strouse alleges that a conspiracy exists among all the Defendants, Strouse has not stated any plausible claim of a conspiracy to deprive Strouse of his civil rights.   Because Strouse's allegation of a conspiracy "amounts to no more than a legal conclusion, on its face it fails to assert a plausible claim."   <u>Francis v. Giacomelli</u>, 588 F.3d 186, 197 (4th Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009); <u>Gooden v. Howard Cnty., Md.</u>, 954 F.2d 960, 969-70 (4th Cir. 1992)); <u>see Capogrosso v. Supreme Court of N.J.</u>, 588 F.3d 180, 184-85 (3d Cir. 2009) (dismissing conclusory allegations of a conspiracy)(citing <u>Crabtree v. Muchmore</u>, 904 F.2d 1475, 1480-81 (10th Cir. 1990)).

In order to satisfy his pleading burden with respect to a conspiracy, Strouse "needed to plead facts that would 'reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.'"   <u>Ruttenberg v. Jones</u>, 283 F. App'x

121, 132 (4th Cir. 2008) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)).  "[T]he bare, conclusory allegation that the [D]efendants conspired to violate his constitutional rights" is insufficient.  Id.  Accordingly, Strouse's broad claims of an overarching conspiracy (see, e.g., Part. Compl. 20), which encompasses all of the named Defendants, will be dismissed without prejudice.

Absent a plausible claim of conspiracy, Strouse has failed to articulate a common question of law and fact for all of the named Defendants.  See Fed. R. Civ. P. 20(a).  Furthermore, Strouse's Particularized Complaint consists of a rambling narrative of a host of perceived offenses, and is so incohesive and incomprehensible, that it simply fails to allege causes of actions that arise "out of the same transaction, occurrence, or series of transactions or occurrences."  Id.

Accordingly, the Court will begin its analysis with the first defendant named in the body of the Particularized Complaint, Counselor Blackburn.  Because of the incomprehensible and disparate nature of Strouse's claims, the Court must drop all other Defendants as they are not properly joined with Defendant Blackburn.  See Jackson, 2010 WL 724023, at *8. Accordingly, the Court dismisses without prejudice all of Strouse's claims except for his claims against Defendant Blackburn.  See id. at *8 n.7 (explaining that, in light of

Virginia's tolling provision, dismissal without prejudice of the plaintiff's constitutional claims failed to create problems with respect to the statute of limitations).  Strouse remains free to refile these dismissed claims, but any new complaint must comply with Rules 8(a) and 20(a).

Moreover, because Strouse fails to adequately set forth his claims against Defendant Blackburn, the Court addresses any sentence wherein Strouse mentions Defendant Blackburn. Accordingly, Strouse seeks damages against Defendant Blackburn based on the following allegations:

| | | |
|---|---|---|
| Claim I: | First Amendment:[5] | "Counselor Blackburn sanctioned Strouse['s] emails, commissary, and phone privileges for possession of UCC." (Part. Coml. 12.) |
| Claim IV: | Eighth Amendment:[6] | Defendant Blackburn "conspired to commit conspiracy to cause harm to Strouse by imposing illegal sanction(s) by possession of UCC . . . conspired to get Strouse locked up [in the] SHU [and] refused to return Strouse's property after the incident report was dismissed . . . ." (Id. at 20.) |
| Claim V: | Ninth Amendment:[7] | Defendant Blackburn "conspired to commit conspiracy towards |

_____

[5] "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I.

[6] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

[7] "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.

Strouse" by "sanction[ing] Strouse to dho for violation of possession of UCC . . . ." (Id. at 21.)

Claim VI:        Fifth Amendment:[8]        Defendant Blackburn "conspired . . . to cause injury and unlawful due process on Strouse" and "referred Strouse to be sanctioned for possession of UCC," "the incident report was dismissed and expunged," (id. at 25) but "refused to return Strouse's confiscated property." (Id. at 26.)

## IV.  ANALYSIS

### A.   First Amendment

Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 822 (1974). A prison regulation impinging on an inmates' constitutional right to free speech is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987); see also Thornburgh v. Abbott, 490 U.S. 401, 415 (1989) (prison security is a legitimate governmental purpose "central to all other corrections goals"). Factors relevant in determining reasonableness of a regulation include

---

[8] In Claim VI, Strouse alleges that Defendant Blackburn violated his Fourteenth Amendment right to due process. Because Strouse is a federal inmate the Court construes Strouse to raise a Fifth Amendment due process claim. The Fifth Amendment provides: "No person shall be . . . deprived of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. V.

(1) the connection between the regulation and a legitimate, neutral government purpose; (2) the existence of alternative means of exercising the right; (3) the impact accommodation of the right would have on guards, other inmates, and prison resources; and, (4) the absence of ready alternatives to the regulation. Turner, 482 U.S. at 89-91. In weighing these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). The prisoner carries the burden of proof under the Turner analysis to disprove the validity of the prison regulation at issue. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While courts should liberally construe pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). The Court need not attempt "to discern the unexpressed intent of the plaintiff." Laber v. Harvey, 438 F.3d 404, 413 n. 3 (4th Cir. 2006). The Fourth Circuit has explained that "though [pro se] litigants cannot, of course, be expected to frame legal issues

14

with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." Beaudett, 775 F.2d 1274, 1276.   In other words, "[d]istrict judges are not mind readers."   Id. at 1278.

In Claim I, Strouse states, in sum, that Defendant Blackburn violated his First Amendment rights by "sanction[ing] Strouse['s] emails, commissary, and phone privileges for possession of UCC."   (Part. Compl. 12.)   Defendant Blackburn's name is scattered throughout the nearly incomprehensible Particularized Complaint, but even cobbled together, Strouse fails to coherently allege facts sufficient to demonstrate that Defendant Blackburn violated his First Amendment rights.   Thus, the Court finds it inappropriate to allow this claim to go forward and require a defendant to extract a coherent claim from this "mishmash of a complaint."   George v. Smith, 507 F.3d 605, 607 (7th Cir. 1997).   Strouse's Particularized Complaint, in its current form, wholly fails to meet even the generous construction requirements afforded to pro se pleadings. Accordingly, Claim I will be dismissed without prejudice.

The Court advises Strouse, that to the extent that he seeks to raise a claim alleging that Defendants have violated his First Amendment rights by refusing to allow him to possess

certain legal materials, such as UCC documents, he may be able to state a viable claim. Nevertheless, he has not done so here.

If Strouse choses to refile, he should limit his efforts on his First Amendment claim. Strouse may not continue to regurgitate nonsense that is so lacking in clarity and encompasses so many individual instances of purported wrongdoing, that the Court or a defendant cannot discern a viable constitutional claim.

## B.   Eighth Amendment

To make out an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts that suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" Strickler v. Waters, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting

16

from the challenged conditions.'" De'Lonta v. Angelone, 330
F.3d 630, 634 (4th Cir. 2003) (quoting Strickler, 989 F.2d at
1381).

The subjective prong of a deliberate indifference claim
requires the plaintiff to allege facts that indicate a
particular defendant actually knew of and disregarded a
substantial risk of serious harm to his person. See Farmer v.
Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is
a very high standard—a showing of mere negligence will not meet
it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing
Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable
> under the Eighth Amendment for denying an
> inmate humane conditions of confinement
> unless the official knows of and disregards
> an excessive risk to inmate health or
> safety; the official must both be aware of
> facts from which the inference could be
> drawn that a substantial risk of serious
> harm exists, and he must also draw the
> inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge
of facts creating a substantial risk of harm is not enough. The
prison official must also draw the inference between those
general facts and the specific risk of harm confronting the
inmate." Quinones, 145 F.3d at 168 (citing Farmer, 511 U.S. at
837); see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997)
(stating same). Thus, to survive a motion to dismiss, the

17

deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich, 129 F.3d at 340 n.2).

In Claim IV, Strouse contends that Defendant Blackburn "conspired to commit conspiracy to cause harm to Strouse by imposing illegal sanction(s) by possession of UCC . . . conspired to get Strouse locked up [in the] SHU [and] refused to return Strouse's property after the incident report was dismissed . . . ." (Id. at 20.) Strouse wholly fails to explain how Defendant Blackburn's conduct implicates the Eighth Amendment, much less caused Strouse a serious or significant injury. Accordingly, Claim IV will be dismissed.

### C. Ninth Amendment

The Ninth Amendment provides that "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. In Claim V, Strouse alleges that Defendant Blackburn violated the Ninth Amendment when he "conspired to commit conspiracy towards Strouse" by "sanction[ing] Strouse to DHO for violation of possession of UCC . . . ." (Id. at 21.) As

18

previously explained in Part III.C, <u>supra</u>, Strouse fails to plead facts that plausibly suggest that a conspiracy exists. Strouse also states that Defendant Blackburn "violated Strouse's 9th. Amendment § 241. conspiracy against rights." (<u>Id.</u>) Strouse neither explains, nor does the Court discern how, Defendant Blackburn violated the Ninth Amendment. Claim IV will be dismissed.

**D.   Fifth Amendment**

To state a claim under <u>Bivens</u>, the plaintiff must show that a defendant, acting under color of federal law, deprived him of a constitutionally protected interest. <u>Middlebrooks v. Leavitt</u>, 525 F.3d 341, 350 (4th Cir. 2008). The Due Process Clause applies only when government action deprives an individual of a legitimate liberty or property interest. <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 569 (1972). The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. <u>Beverati v. Smith</u>, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases).

In Claim VI, Strouse argues that

on 10 July 2012, Unit Team Counselor Blackburn conspired with the said defendant(s) to cause injury and unlawful due process onto Strouse, on July 10, 2012 Counselor Blackburn referred Strouse to be sanctioned for possession of UCC by DHO Bennet at 11:05 am hours, Strouse complained to post Unit Mgr. Carter that the incident report was to be dismissed

> because it was passed 5 work days, Counselor Blackburn
> summoned Strouse to unit team and stated to Strouse
> that the incident report was dismissed and expunged,
> Counselor Blackburn told Strouse to return the
> incident report copy 'Strouse's Copy', Strouse denied,
> Strouse's cell was subjecte to cell search, and more
> searches to follow, but Strouse hidden the incident
> report, and copies and mailed to this court . . . .

(Part. Compl. 25.)   While not entirely clear, it appears that

Strouse alleges that he refused to return the incident report to

Defendant Blackburn and hid it from officials (see id.), but

later alleges that Defendant Blackburn "refused to return

Strouse's confiscated property."   (Id. at 26.)

Strouse's rambling and contradictory allegations fails to

indicate that Defendant Blackburn's actions resulted in the

deprivation of any liberty or property interest.   To the extent

Strouse claims Defendant Blackburn referred Strouse for a

disciplinary hearing, Strouse also states that the alleged

"incident report was dismissed and expunged."   (Id.)  Moreover,

Strouse's allegations that Defendant Blackburn "told Strouse to

return the incident report copy," and Strouse refused to do so

and hid a copy, (id. at 25), cannot be reconciled with Strouse's

later statement that Counselor Blackburn "refused to return

Strouse's confiscated property."   (Id. at 26.)   As such, Strouse

fails to allege facts that plausibly suggest that Defendant

Blackburn violated his right to due process.   Claim VI will be

dismissed.

## V.   CONCLUSION

The claims against Defendants Wilson, Kiddy, Negron, Bernardo, Bennet, and Whitley are dismissed without prejudice. Claims IV, V, and VI against Defendant Blackburn are dismissed with prejudice.   Claim I against Defendant Blackburn is dismissed without prejudice.  The action will be dismissed.

The Clerk is directed to send a copy of this Memorandum Opinion to Strouse.

_____ /s/   *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  *April 21, 2015*

21